**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY et al., Plaintiffs/Appellants,**

v.

**TAHOE REGIONAL PLANNING AGENCY, etc., et al., Defendants**

**and**

**James J. Jordan et al., Defendants/Appellees.**

**No. 78–2006.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1980.

Decided Nov. 7, 1980.

Harold E. Rogers, Jr. & Associates, San Francisco, Cal., for plaintiffs/appellants.

Gary A. Owen, Shaw, Heaton & Doescher, Ltd., Carson City, Nev., argued for defendants/appellees; C. Clifton Young, Reno, Nev., on brief.

Before HUG, FARRIS and POOLE, Circuit Judges.

FARRIS, Circuit Judge:

Northwestern National Life Insurance Co. and other bondholders appeal the dismissal for failure to state a claim of their complaint which alleged that the Tahoe Regional Planning Agency's land use plan and ordinance impaired the assessment bonds issued by Round Hill General Improvement District in violation of Article 1, section 10, clause 1 of the United States Constitution. Northwestern argues that the land use ordinance violated the contract clause because it deterred payment of the underlying assessments and effectively destroyed the lien securing the bonds' indebtedness. We affirm.

I. *FACTS*

The Round Hill General Improvement District is a municipal corporation encompassing 643 acres on the south shore of Lake Tahoe in Douglas County, Nevada. The district was created on May 22, 1964, for the purpose of providing streets, water, sewer, drainage, and other facilities for a real estate development within the district, called Round Hill. *See generally* General Improvement District Law, Nev.Rev.Stat. §§ 318.010–.535 (1973, 1975 & 1977).

Pursuant to statutory authority, the district issued assessment bonds in 1964 and 1965 in order to construct the necessary support facilities for the Round Hill real estate development. All of the bonds issued are payable from assessments, secured by liens, against 443 acres of land located in the district.

In December 1969 Congress consented to the formation of the Tahoe Regional Planning Compact between Nevada and California. Act of Dec. 18, 1969, Pub.L. No. 91–148, 83 Stat. 360. The Compact established the Tahoe Regional Planning Agency to adopt ordinances, rules, regulations, and policies to effectuate a regional plan setting minimum standards for water purity, zoning, and shoreline development. On February 10, 1972, the Planning Agency adopted a comprehensive land use ordinance which limited the use of various lands including 243 acres within the Round Hill District. The 243 acres were rezoned as "General Forest District." Under this classification, property can be used only for recreation and for timber growing and harvesting. Residential uses are permitted only on preexisting lots.

In September 1977 Northwestern filed suit against the Tahoe Regional Planning Agency claiming that the Agency's land use ordinance violated the contract clause of the United States Constitution. After our decision in *Jacobson v. Tahoe Regional Planning Agency*, 558 F.2d 928 (9th Cir. 1977), the district court dismissed Northwestern's suit on the ground of sovereign immunity. On February 3, 1978, Northwestern filed an amended complaint naming the appellees herein. The district court concluded that Northwestern failed to allege an impairment under the contract clause and dismissed the action. *Northwestern National Life Insurance Co. v. Jordan*, 447 F.Supp. 856 (D.Nev.1978). Northwestern appeals.

II. *DISCUSSION*

The contract clause of the United States Constitution provides that: "No State shall

... pass any ... Law impairing the Obligation of Contracts ...." U.S.Const. Art. I, § 10, cl. 1. Northwestern contends that the Planning Agency's actions have unconstitutionally impaired the bond obligations of the Improvement District. This contention raises the threshold question of whether the Planning Agency is a "State" within the meaning of the contract clause. We need not answer that question. Even if congressional approval of the Compact deprives the Planning Agency of its "State" character and therefore prevents direct application of the contract clause, the Fifth Amendment's due process clause provides essentially the same restraint against federal impairment of the obligation of contracts. *See Thorpe v. Housing Authority*, 393 U.S. 268, 278–80 & n.31, 89 S.Ct. 518, 524–25 & n.31, 21 L.Ed.2d 474 (1969); *Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934). *See also Perry v. United States*, 294 U.S. 330, 350–54, 55 S.Ct. 432, 434–36, 79 L.Ed. 912 (1935). Thus, the prohibition of the contract clause is either directly or indirectly applicable to the actions of the Tahoe Regional Planning Agency.

■ In order to invalidate legislative action, a challenge under the contract clause must clear two hurdles. The challenged action must first be shown to substantially impair some contractual obligation. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2723, 57 L.Ed.2d 727 (1978); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977). After showing such an impairment, the challenger must demonstrate that legitimate governmental interests do not justify the impairment. *See* 438 U.S. at 245, 98 S.Ct. at 2723; 431 U.S. at 21, 97 S.Ct. 1517.

Northwestern must first show that the Tahoe Regional Planning Agency's land use plan and ordinance substantially impaired a contractual relationship. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. at 244, 98 S.Ct. at 2723. "Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the

other hand, will push the inquiry to a careful examination of the nature and purpose of the state [action]." *Id.* at 245, 98 S.Ct. at 2723 (footnote omitted). The state action complained of must alter the obligations or duties of the parties to a contract before the state can be found to have violated the contract clause. *See, e. g., id.* at 244, 98 S.Ct. at 2723; *United States Trust Co. v. New Jersey*, 431 U.S. at 17 & n.14, 97 S.Ct. at 1515 & n.14; *Keefe v. Clark*, 322 U.S. 393, 396, 64 S.Ct. 1072, 1073–74, 88 L.Ed. 1346 (1944).

■ Here, Northwestern does not contend that the land use ordinance alters either the express terms of the assessment bonds or the obligations of the parties to the bonds. Instead, Northwestern complains that an indirect effect of the land use ordinance was to deter payment of the assessments which were to be used to pay off the bond indebtedness. It asserts that the ordinance deterred payment of the underlying assessments and effectively destroyed the lien securing the bonds' payment. However, because the bondholders were given no guarantee that the lands assessed would be free from restrictive zoning, the ordinance did not impair any obligations of the parties to the bonds. *See Call v. Feher*, 93 Cal.App.3d 434, 443, 155 Cal.Rptr. 387, 391 (1979). The land use ordinance affected only the property and not the legal obligations under the bonds. Such an effect upon the underlying subject matter of a contract does not contravene the contract clause.

■ Northwestern also contends that the land use ordinance violated the contract clause because it impaired enforcement of the obligations under the bond. Northwestern alleges that because the restrictive zoning drastically reduced the value of the assessed lands, not only were the landowners deterred from paying the assessments, but any defaults caused by reduced land values could not be adequately remedied by judicial land sales. However, even assuming that judicial land sales would not adequately compensate the bondholders for the defaults allegedly caused by the land use ordinance, neither the statute authorizing

issuance of the bonds, nor the bonds themselves, guaranteed that no action would be taken which might affect the value of the assessed lands. Further, because restrictive zoning to discourage urbanization of open areas has been recognized as a legitimate exercise of a state's police power, *see Agins v. City of Tiburon*, —— U.S. ——, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), Nevada's authority to guarantee that assessed lands will not be restrictively zoned is open to question. *See Stone v. Mississippi*, 101 U.S. 814, 817, 25 L.Ed. 1079 (1880) (a legislature cannot bargain away the police power of a state). Because the state had no contractual duty to preserve the value of the lands, no obligation was impaired. Northwestern again complains only of incidental effects upon the subject matter of the bonds. As we have stated, the contract clause does not prohibit such effects.

■ The land use ordinance complained of did not alter the obligation of the landowners to pay the assessments, and it did not impermissibly interfere with the remedies available to the bondholders. Because Northwestern has failed to allege an impairment which falls within the prohibition of the contract clause, we need not consider whether the land use ordinance could have been justified as a reasonable and necessary exercise of the police power.[1]

Affirmed.

---

1. Although the contract clause's prohibition applies to both private and governmental contractual obligations, *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977); *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 137–39, 3 L.Ed. 162 (1810), where the alleged impairment is of a governmental obligation greater justification for interference with contractual obligations is required, *see Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 n.15, 98 S.Ct. 2716, 2723 n.15, 57 L.Ed.2d 727 (1978). We do not decide whether the Planning Agency is a state agency within the meaning of the contract clause. Because we do not reach the stage of inquiring into justification for impairment, we also express no view as to the proper standard of scrutiny for federal impairment of state contractual obligations.