46 F.3d 1141
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GRASS VALLEY DISPOSAL, INC., Plaintiff-Appellant,
v.
COUNTY OF NEVADA; Board of Supervisors of the County of
Nevada, Defendants-Appellees.
 No. 93-16066.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1995.
Decided Feb. 3, 1995.
 
 Before: ALDISERT*, CHOY and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In this action arising out of a municipal contract for garbage collection and disposal, Grass Valley Disposal, Inc. appeals from a district court order dismissing its claim under the Contract Clause, dismissing its due process claim for deprivation of a fair and reasonable return on its investment and refusing to entertain its pendent state law claims. We affirm.
 
 
 3
 Grass Valley hauls solid waste in the County of Nevada and deposits it at the McCourtney Road Landfill pursuant to a franchise agreement with the County dated March 11, 1985. The Agreement included a provision for adjustment of residential rates based on future increases in Grass Valley's costs. Incorporated by reference into the Agreement was Grass Valley's initial rate proposal for refuse collection, which included the following language: "The above rates are based on the understanding that there will be no tipping fee at the disposal area."
 
 
 4
 At the time the parties entered into the Agreement, private parties or businesses depositing solid waste at the landfill were not charged tipping or gate fees. In 1990, the County's operating costs at the landfill increased substantially as a result of orders from the California Waste Management Board to make improvements to the landfill and to correct environmental deficiencies. Litigation with the State of California was pending over the nature and extent of required improvements to the landfill. In order to meet rising costs and to resolve its dispute with the State, the County passed Ordinance No. 1648 on June 26, 1990, establishing parcel charges and gate fees for residents and businesses using the landfill.
 
 
 5
 Grass Valley initially refused to pay the gate fees. On July 25, 1990, the County informed Grass Valley that payment of the gate fees was a condition of landfill use and that Grass Valley was entitled to a rate increase in order to pass on to its customers the cost of the fees. Grass Valley thereafter applied for an increase in residential rates and, on September 5, 1990, the County Board of Supervisors passed and adopted Resolution No. 90529, authorizing Grass Valley to increase its rates by approximately 100 percent to all residential customers. Specifically, Resolution No. 90529 allowed Grass Valley to increase its monthly charge for hauling one can of garbage from $5.40 to $10.41. The monthly charge for hauling two cans increased from $7.05 to $15.57. The monthly charge for three cans increased from $8.70 to $20.73. Finally, the monthly charge for residential waste-wheelers service increased from $11.30 to $21.83. Notwithstanding these rate increases, Grass Valley sued the County in district court, asserting that imposition of the gate fees violated the Contract Clause and Due Process Clause of the Constitution. Along with these federal claims, Grass Valley alleged several state law violations.
 
 I.
 
 6
 The major question for decision is whether the district court erred in dismissing Grass Valley's claim under the Contract Clause. The Contract Clause provides: "No state shall ... pass any ... Law impairing the Obligation of Contracts ..." U.S. Const., Art. 1, Sec. 10. The clause appears far-reaching in scope but has been interpreted narrowly because " 'literalism in the construction of the contract clause ... would make it destructive of the public interest by depriving the State of its prerogative of self-protection.' " Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 240 (1978) (quoting W.B. Worthen Co. v. Thomas, 292 U.S. 426, 433 (1934)).
 
 
 7
 The district court reasoned that Grass Valley's Contract Clause claim against the County must fail because Grass Valley was not precluded from seeking a damage remedy for breach of contract in state court. At the invitation of the County, the court accepted the teachings of the Court of Appeals for the Seventh Circuit in E & E Hauling, Inc. v. Forest Preserve Dist. of Du Page County, 613 F.2d 675 (7th Cir.1980), and held that there could be no impairment of obligation under the Contract Clause if the plaintiff had a remedy against the state or its subdivision for breach of contract:
 
 
 8
 The Supreme Court in the context of the contract clause has drawn a distinction between a breach of a contract and impairment of the obligation of the contract. The distinction depends on the availability of a remedy in damages in response to the state's (or its subdivision's) action. If the action of the state does not preclude a damage remedy the contract has been breached and the non-breaching party can be made whole. If this happens there has been no law impairing the obligation of contract.
 
 
 9
 E & E Hauling, 613 F.2d at 679.
 
 
 10
 We review a dismissal for failure to state a claim upon which relief may be granted de novo. Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir.1988). We may affirm the district court on any ground finding support in the record. Schneider v. TRW, Inc., 938 F.2d 986, 989 (9th Cir.1991). Accordingly, we affirm the district court's dismissal of Grass Valley's Contract Clause claim not based on the reasoning of E & E Hauling, but rather on the analysis set forth in Northwestern National Life Ins. Co. v. Tahoe Regional Planning Agency, 632 F.2d 104 (9th Cir.1980).
 
 
 11
 Under Northwestern National, in order to invalidate legislative action, a challenge under the Contract Clause must clear two hurdles. First, the challenged action must be shown to substantially impair some contractual obligation. 632 F.2d at 106. Second, after showing such an impairment, the challenger must demonstrate that legitimate governmental interests do not justify the impairment. Id. (citing Spannaus, 448 U.S. at 244-45, and United States Trust Co. v. New Jersey, 431 U.S. 1, 17, 21 (1977)). In Northwestern National, bondholders sued a state agency on the ground that an environmental land use ordinance enacted by the agency impaired the value of assessment bonds in violation of the Contract Clause. In affirming the district court's dismissal for failure to state a claim, we stated:
 
 
 12
 Because the state had no contractual duty to preserve the value of the lands, no obligation was impaired. [Appellant] complains only of incidental effects upon the subject matter of the bonds. As we have stated, the contract clause does not prohibit such effects.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 Because [Appellant] has failed to allege an impairment which falls within the prohibition of the contract clause, we need not consider whether the land use ordinance could have been justified as a reasonable and necessary exercise of the police power.
 
 
 16
 Northwestern National, 632 F.2d at 107.
 
 
 17
 Applying the teachings of Northwestern National to the facts in this case, we conclude that there was no impairment of a contractual obligation. Although Grass Valley's initial rate proposal, incorporated by reference into the Agreement, was "based on the understanding that there will be no tipping fee at the disposal area," counsel for Grass Valley conceded at oral argument that the County had no contractual duty to refrain from instituting gate charges in the future. On the contrary, a mechanism for raising rates was in place precisely to help Grass Valley pass on increased costs. Grass Valley complains only of the incidental effects of the increased rates. As we stated in Northwestern National, 632 F.2d at 107, the Contract Clause does not prohibit incidental effects.
 
 
 18
 Because we conclude there was no impairment of a contractual obligation, we need not address the question of whether the impairment was "substantial" or whether the County had "legitimate governmental interests" justifying the impairment. See Northwestern National, 632 F.2d at 106; see also General Motors Corp. v. Romein, 503 U.S. 181, ----, 112 S.Ct. 1105, 1110 (1992) ("In this case, however, we need not reach the questions of impairment, as we hold that there was no contractual agreement regarding the specific ... terms allegedly at issue.").[1]
 
 II.
 
 19
 In its second claim for relief, Grass Valley alleges that the County's implementation of Ordinance 1648 was done in a clearly arbitrary and unreasonable manner having no substantial relation to public welfare, and that enforcement of the ordinance deprived Grass Valley of a "fair and reasonable" return on its investment by limiting the amount it may recover on capital investments. Grass Valley appeals only the district court's conclusion that it failed to state a claim with respect to its alleged deprivation of a "fair and reasonable return on its investment." We have recognized a cause of action based on the denial of a fair and reasonable return in Sierra Lake Reserve v. City of Rocklin, 938 F.2d 951, 958 (9th Cir.1991), vacated on other grounds, 987 F.2d 662 (9th Cir.1993). In Sierra Lake, a mobile park owner sued the City of Rocklin, alleging that a rent control ordinance had effected a taking of its property without just compensation and that implementation of the ordinance violated due process and equal protection.
 
 
 20
 The district court rejected Grass Valley's argument that it was deprived of a fair and reasonable return on its investment, interpreting Sierra Lake to allow such a cause of action only when the statute or regulation directly set the rates plaintiff may charge for its product or service. Because the ordinances in this case are not price-control regulations, reasoned the court, Grass Valley failed to state a claim under this theory. Specifically, the court noted that Grass Valley's disposal rates are set contractually under a procedure set out in the Agreement and the gate fee ordinances are simply a factor indirectly affecting the profitability of the contract with the County. We agree. Grass Valley is unable to cite any case recognizing a cause of action for deprivation of a fair and reasonable rate of return that does not deal with direct governmental price controls. Because there is no State or County regulation in this case setting the rates Grass Valley may charge its customers, there is no cause of action for substantive due process.
 
 III.
 
 21
 We review a district court's decision declining to exercise supplemental jurisdiction over pendent claims after dismissal of federal claims for abuse of discretion. Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1309 (9th Cir.1992), cert. denied, 113 S.Ct. 1644 (1993). Such a decision ordinarily is not disturbed by the Court of Appeals. Schneider v. TRW, Inc., 938 F.2d 986, 993-94 (9th Cir.1991); see also Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir.1981). We conclude that there was no abuse here.
 
 IV.
 
 22
 We have considered all arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts in this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Even assuming an impairment, Grass Valley's Contract Clause claim fails because whatever impairment there might be is not substantial. A statute does not substantially impair a party's contract rights unless it adversely affects that party's reasonable expectations under the contract. Energy Reserves Group v. Kansas Power & Light, 459 U.S. 400, 416 (1983). Because Grass Valley knew the County could impose gate fees in the future, both under contract and under state law, and because a contractual rate-adjustment mechanism was in place to deal with such a contingency, Grass Valley "knew its contractual rights were subject to alteration." Id. It knew that future imposition of gate fees "was foreseeable as the type of law that would alter contract obligations." Id. In short, its "reasonable expectations have not been impaired by the [County Ordinance]." Id. Moreover, "[t]here can be little doubt about the legitimate public purpose behind [Ordinance No. 1648]." Id. at 417