Mark SCHENCK, et al., Plaintiffs,

v.

The CITY OF HUDSON,
et al., Defendants.

No. 5:96–CV–1481.

United States District Court,
N.D. Ohio,
Eastern Division.

March 13, 1998.

Nicholas T. George, Law Offices of Nicholas T. George & Associates, Akron, OH, John W. Solomon, Jay P. Porter, Brouse & McDowell, Akron, OH, Mark A. Ferguson, Taft, Stettinius & Hollister, Cleveland, OH, Timothy J. Grendell, Grendell & Targove, Independence, OH, for Plaintiffs.

Charles T. Riehl, III, Walter & Haverfield, Cleveland, OH, Amie L. Bruggeman, Charles E. Zumkehr, Breaden M. Douthett, Roetzel & Andress, Akron, OH, for City of Hudson, James Smith, Timothy J. Murphy, David D. Bashore, Jane Waterson, Barbara Berlin, John Krum, Dave McNiff, Rebecca Reagan, Harold Bayless.

Socrates H. Tuch, Office of the Attorney General, Health and Human Services Section, Columbus, OH, for Betty Montgomery.

**MEMORANDUM OPINION AND ORDER**

GWIN, District Judge.

On December 9, 1997, Defendants [1] filed a motion for summary judgment [Doc. 70]. The defendants seek judgment as to plaintiffs' constitutional challenge to a zoning ordinance. The Court grants the motion for the reasons that follow.

## I. PROCEDURAL BACKGROUND

The plaintiffs [2] brought this action seeking preliminary and permanent injunctions against the enforcement of a slow-growth zoning ordinance enacted by the Defendant City of Hudson. On August 1, 1996, this court granted a preliminary injunction restraining the enforcement of this zoning ordinance.[3] The Defendant City of Hudson appealed. The Sixth Circuit Court of Appeals reviewed for abuse of discretion. On June 4, 1997, the Sixth Circuit Court of Appeals dissolved this Court's preliminary injunction and remanded this case for proceedings on the merits.

In its decision, the Sixth Circuit found that this Court's scope of review is limited. The Court stated: "In reviewing a zoning ordinance, a federal court may only consider 'whether the legislative action is rationally related to legitimate state land use concerns.' *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1223 (6th Cir.1992). Therefore, to prevail in this action, the plaintiffs must show that the zoning provision is not rationally related to a legitimate land use concern." *Schenck v. City of Hudson,* 114 F.3d 590, 593 (6th Cir.1997).

The Sixth Circuit then found that the Defendant City of Hudson's zoning ordinance aimed at a legitimate governmental purpose,

---

1. The defendants are the City of Hudson, Hudson Mayor Harold Bayless, Hudson City Manager James Smith, Hudson Councilpersons Timothy J Murphy, Jane Waterson, Barbara Berlin, Rebecca Reagan, Dave McNiff, John Krum and Ohio Attorney General Betty Montgomery.

2. The plaintiffs are primarily developers and homeowners of the City of Hudson who have made investments affected by the zoning ordinance described herein.

3. United States District Court Judge David D. Dowd, Jr. presided over hearings upon plaintiffs' application for a preliminary injunction. The preliminary injunction enjoined the City of Hudson from enforcing Chapter 1207 of its Zoning Code against any lots with final or preliminary plat approval and access to a water system, sewer or septic services, and roads.

stating: "It is clear that the City of Hudson had a proper purpose, land use." *Id.* at 594. The Court continued, finding that the Hudson zoning ordinance was rationally related to this purpose.[4]

## II. FACTUAL BACKGROUND

The Defendant City of Hudson is the result of a 1994 merger between the City of Hudson Village and Hudson Township. The City covers 25 square miles and has an estimated population of 21,000. In recent years, the city grew rapidly.

As part of this merger, the City established a plan for land use, including a limitation on growth. The plan managed growth to avoid pressure on the City's infrastructure and to decrease the disparity between residential and nonresidential growth. The City based its plan upon findings that its sewer facilities were operating beyond capacity; its water treatment and distribution systems were inadequate; its roads were insufficient for current needs, let alone future growth; its emergency services were inadequate; and its property tax collections from new home construction would not ameliorate its problems.

To carry out the plan's proposals, the City enacted zoning ordinances, including Chapter 1207, the provision at issue here. Under Chapter 1207, an applicant for a zoning certificate to construct a "residential dwelling unit" must first obtain a residential development allotment. The Hudson City Council annually sets the number of residential allotments that they will issue in that year. It bases its decision upon the level of development and on the ability of the City's infrastructure to cope with new development. The Chapter 1207 zoning ordinance also allows additional allotments upon a showing of hardship. The zoning ordinance further allows appeals to the City Council from denial of an allotment.

In July 1996, the Council set the first allotment at 100 with 30 allotments for special projects.[5] The allotments are primarily first distributed to a "priority development pool." This pool includes: (1) affordable housing; (2) housing reserved for the disabled and those over the age of sixty-two; (3) lots that were created and received preliminary or final plat approval before the ordinance's effective date; and (4) lots of five acres or more with access to a public street, public water, and sewer systems.

The demand for priority development lots far outpaced the number available. The City of Hudson has 350–375 lots that have preliminary or final plat approval and are, therefore, qualified for the priority pool. As a result, all 84 applicants in the July 1996 distribution were priority applicants, and a lottery determined the distribution. No applicant received more than one allotment. The plaintiff-developers did not receive allotments in this lottery. They filed this action.

## III. ANALYSIS

### A.

■ In Count One of their Complaint, plaintiffs say Chapter 1207 of the City of Hudson's Zoning Code violates Plaintiffs' substantive Due Process rights because it is "not rationally related" to legitimate interests of the City.

A court's review of legislative determinations reflected in zoning ordinances is narrow. When reviewing legislative acts, such as zoning ordinances, the Court has little right to review or weigh evidence. *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1223 (6th Cir.1992). The only permissible inquiry is whether the legislative action is rationally related to legitimate land use concerns.

The principal test for measuring the constitutionality of a zoning ordinance under the Due Process Clause is set forth in *Village of*

---

4. The Sixth Circuit found:
   The City of Hudson wishes to control growth of residential areas until such time as its infrastructure is able to meet current and future needs. A cap on the number of homes built in the City unquestionably bears a rational relationship to this concern.

114 F.3d at 594.

5. These included housing for the elderly and disabled and developments with mixed commercial and residential uses located in the downtown area.

*Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). There, the Supreme Court stated that before courts can declare a zoning ordinance unconstitutional on due process grounds, the provisions must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. *Id.* 272 U.S. at 395. The Court further held that if the validity of the land classification is "fairly debatable," the legislative judgment must control. *Id.* at 388. *Messiah Baptist Church v. County of Jefferson, State of Colo.*, 859 F.2d 820 (10th Cir.1988).

As recognized by the Sixth Circuit in *Hudson*, " '[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life ....' " *Hudson*, 114 F.3d at 593 (quoting *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). Moreover, no constitutional violation occurs because the government does not choose the best way to achieve its objective.

Plaintiffs disagree with the decision of the Defendant City of Hudson's Council. The plaintiff says the cap on development resulted because "Hudson has ... deliberately scuttled public works for political expediency." Plaintiffs' brief at 2. Plaintiffs complain that any need for limitation resulted because Hudson refused to make necessary road modifications. In essence, plaintiffs complain about *political* decisions made by the elected representatives of Hudson.

"[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). The Sixth Circuit best described this rule in its opinion concerning the present case.

A legislative body need not even select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals. *See National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir.) ("If there are alternative ways of solving a problem, [the federal courts] do not sit to determine which of them is best suited to achieve a valid state

objective."), *cert. denied*, 515 U.S. 1143, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995). Likewise, despite the temptation it is not the province of a federal court to act as a super-zoning board. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) ("[T]he Due Process Clause does not empower the judiciary 'to sit as a superlegislature to weigh the wisdom of legislation.' ")

*Hudson*, 114 F.3d at 594 (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963)).

Under its police power, Defendant City of Hudson has the right to maintain its character and to grow at a slower pace to allow orderly provision of services, including infrastructure service levels. It has the right to insure that the costs of development do not exceed revenue available from such development. It also has the right to limit the density of population to prevent congestion.

■ Plaintiffs' due process claim argues that the political leadership of Defendant City of Hudson improperly weighed the decisions affecting the city. This hardly implicates due process concerns. Whether wise or foolish, the decisions on growth made by the City's elected representatives are not subject to review by this Court. "It cannot be said that the ordinance in this respect 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' " *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 388, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (quoting *Purity Extract Co. v. Lynch*, 226 U.S. 192, 204, 33 S.Ct. 44, 57 L.Ed. 184 (1912)).

For these reasons, the Court grants defendants motion for summary judgment as to Count One of the complaint.

**B.**

■ In Count Two, Plaintiffs allege that Hudson's Chapter 1207 zoning ordinance violates the Equal Protection Clause. The plaintiffs summarize this claim: "[t]he housing cap violates equal protection guarantees because it allows some people to live in Hudson and not others when there is no rational basis for such an exclusionary policy." Sim-

ply to state this claim betrays its facetiousness.

As described, Chapter 1207 limits growth by restricting allotments. In distributing these allotments, the city reserves eighty percent of the allotments for affordable housing, housing reserved for the disabled and elderly, lots that previously received preliminary or final plat approval, and large lots with access to a public street, public water, and sewer systems. Among these priority applicants, a lottery makes selection.

Thus, Chapter 1207 makes classification benefitting less wealthy, benefitting the elderly and disabled, and benefitting people who had received previous plat approval. Among these groups, Chapter 1207 makes classification among those who are lucky in the lottery and those who are not.

■ Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *Bowen v. Gilliard,* 483 U.S. 587, 600–603, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987).

■ The separation of powers suggests judicial restraint. "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

The plaintiffs make no showing that any suspect classification or fundamental rights are here involved. As such, Defendant City of Hudson must only show that its zoning restrictions have some rational relationship to legitimate municipal concerns. In its decision here, the Sixth Circuit found that the City of Hudson had a proper purpose, land use. Additionally, the Sixth Circuit found:

> The City of Hudson wishes to control growth of residential areas until such time as its infrastructure is able to meet current and future needs. A cap on the number of homes built in the City unquestionably bears a rational relationship to this concern. Even though the City of Hudson will have to remedy existing infrastructure problems regardless of whether another house is built, Chapter 1207 is rationally related to the City's legitimate concerns.

*Hudson,* 114 F.3d at 594–95.

The Court finds no material facts that would support plaintiffs' claims that Chapter 1207 violates their rights to equal protection of law. The Court gives defendants judgment as to Count Two of the Complaint.

## C.

In Count Three of their complaint, plaintiffs allege a violation of the Contracts Clause.[6] Count Four also alleges a violation of the Contracts Clause. In part, plaintiffs allege that the zoning ordinance slowed growth, thus delaying the construction of a recreational facility a developer promised to build after certain phases of the development were completed. The complaint also says that slow growth will impair the developers' ability to pay loan contracts. Count Five alleges a violation of 42 U.S.C. § 1983 premised upon the above alleged constitutional violations.

■ Plaintiffs complain that Hudson's zoning ordinance impairs their contract rights by limiting the number of homes that will be built near the homes of Plaintiffs Dagley and Custer in the Nottingham Gates development. Plaintiffs allege that the ordinance impairs the contract rights of Hudson Land, L & V and Schenck because they will be unable to repay loans incurred to build

---

6. Art. I, § 10, cl. 1 of the United States Constitution provides, in part: "No State shall … pass any … Law impairing the Obligation of Contracts …."

streets and other improvements in their subdivisions.

The Contract Clause does not operate to obliterate the police power of the States. "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals." *Manigault v. Springs,* 199 U.S. 473, 480, 26 S.Ct. 127, 50 L.Ed. 274 (1905).

In *Energy Reserves Group, Inc. v. Kansas Power and Light Co.,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), the United States Supreme Court set forth a three-step balancing test to examine legislation under the Contract Clause. First, a court must ask whether the legislation has, in fact, operated as a substantial impairment of a contractual obligation. Second, if a substantial impairment exists, the Court should examine whether the legislation has a significant and legitimate public purpose. Third, the Court must review whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." *Id.* 459 U.S. at 411, (quoting *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).

In *Kansas Power,* the Supreme Court directed that no party has implicated the Contract Clause unless the state law causes a substantial impairment of a contractual relationship. Thus, in determining the extent of the impairment, this Court needs to consider whether the industry the complaining party has entered has been regulated in the past. *Id.* 459 U.S. at 411. In areas long subject to state regulation, states have great power to continue regulation without violating the Contract Clause of the Constitution.

Second, this Court needs review the degree to which the legislation impairs contract rights. If the regulations are a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation. *United States Trust Co.,* 431 U.S. at 22. If the state advances a sufficient public purpose, the "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 504, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). Even if there is substantial impairment, the state retains the right to remedy broad and general social or economic problems. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 247, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

Land use and building regulation have long existed in Hudson. Plaintiffs entered their contracts aware that government regularly affected zoning and building issues. In such circumstances, the government has greater discretion in legislating even where such legislation may affect contract rights. *Hudson Water Co. v.* McCarter 209 U.S. 349, 357, 28 S.Ct. 529, 52 L.Ed. 828 (stating that "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.").

Land use is a legitimate matter of concern for Hudson. The zoning at issue here is a proper exercise of the City's police power. See *Schenck v. City of Hudson,* 114 F.3d 590, 595 (6th Cir.1997).

The primary focus of the Contract Clause was upon legislation that was designed to cancel or adjust pre-existing debtor-creditor relationships that obligors were unable to satisfy. See e.g., *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 503, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Home Bldg. & Loan Assn. v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). Here, Chapter 1207 does not directly cancel or adjust any contract. While states may not directly impair the obligation of contracts,

they may legislate even if such legislation may operate collaterally or incidentally to impair or destroy the obligation of private contracts. *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co.,* 294 U.S. 648, 680, 55 S.Ct. 595, 79 L.Ed. 1110 (1935).

Because Chapter 1207 does not directly affect plaintiffs' contracts, the Court finds no merit to plaintiffs' Contract Clause claims.[7] Consequently, the Court gives defendants judgment as to Counts Three, Four and Five of the complaint.

### D.

Plaintiffs' remaining claims are premised upon state law. There being no diversity of citizenship of the parties, the Court has no independent basis for jurisdiction. Having determined the merits of plaintiffs' federal claims, the Court dismisses the remaining counts of plaintiffs' complaint without prejudice so that the plaintiffs may pursue resolution of these unresolved claims in the state courts.[8]

IT IS SO ORDERED.

---

**7.** *See Northwestern Nat. Life Ins. Co. v. Tahoe Regional Planning Agency,* 632 F.2d 104 (9th Cir.1980)(finding that effect of land use ordinance did not contravene Contract Clause where the ordinance affected only property and did not impair any obligations of parties to assessment bonds issued for development of the property).

**8.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The doctrine of "pendent" jurisdiction permits federal courts to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim, the two arising out of the same event or connected series of events. Under pendent jurisdiction, the federal claim acts as the equivalent of a jurisdictional crutch. In the constitutional sense, the relatedness of the two claims makes both of them part of the same constitutional "case". Because pendent jurisdiction is principally associated with the federal question jurisdiction, where the existence of a federal claim supports jurisdiction of a "pendent" state claim, disposition of the federal claim allows the district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C.A. § 1367.