*22-1741*
*Ateres Bais Yaakov Academy of Rockland v. Town of Clarkstoawn*

# In the
# United States Court of Appeals
## for the Second Circuit

August Term 2022
No. 22-1741-cv

ATERES BAIS YAAKOV ACADEMY OF ROCKLAND,
*Plaintiff-Appellant,*

v.

TOWN OF CLARKSTOWN, GEORGE HOEHMANN, CUPON INC., CITIZENS
UNITED TO PROTECT OUR NEIGHBORHOODS OF GREATER NANUET INC.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: JUNE 14, 2023
DECIDED: DECEMBER 8, 2023

Before: PARKER, PARK, and NATHAN, *Circuit Judges*.

Appellant Ateres Bais Yaakov Academy of Rockland sued Appellees in the United States District Court for the Southern District of New York (Román, *J.*) asserting claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000c, *et seq.*, under 42 U.S.C. §§ 1983 and 1985, and under state law for tortious interference with contract. The Academy essentially alleged that Appellees blocked construction of a school in Clarkstown, New York intended to educate Orthodox Jewish girls. The district court dismissed the complaint for lack of subject matter jurisdiction.

On appeal, Appellant contends that the district court erred in holding that its religious discrimination and civil rights claims were not ripe and erroneously concluded that it failed to satisfy the traceability requirement for Article III standing as to its tortious interference claim. We agree. We therefore **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion**.**

JOSHUA HALPERN, (Yehudah L. Buchweitz, Kevin M. Simmons, David Yolkut, *on the briefs*), Weil, Gotshal & Manges LLP, Washington, DC, Dallas, TX & New York, NY, *for Plaintiff-Appellant*.

ELIZA M. SCHEIBEL, (John M. Flannery, *on the brief*), Wilson, Elser, Moskowitz, Edelman & Dicker LLP, White Plains, NY, *for Defendants-Appellees*.

PARKER, *Circuit Judge*:

In 2018 and 2019, Plaintiff-Appellant Ateres Bais Yaakov Academy of Rockland ("ABY") contracted to purchase property in Clarkstown, New York owned by Grace Baptist Church to establish an Orthodox Jewish school. ABY alleges that, in response, the Town of Clarkstown, and Town Supervisor George Hoehmann (the "Town Defendants"), along with local citizens who had formed a chapter of an organization known as Citizens United to Protect Our Neighborhood Inc. ("CUPON"), came together to keep the Orthodox school out of the community. ABY alleges that, to achieve this result, the Town Defendants and CUPON manipulated an ostensibly neutral building permit application and zoning appeals process. Eventually, ABY alleges, the Town's efforts were successful, and Grace Church refused to sell the property to ABY.

ABY then sued in the United States District Court for the Southern District of New York, asserting claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §

2000c, *et seq.*, 42 U.S.C. §§ 1983 and 1985, and state law for tortious interference with contract.

Appellees moved under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and for failure to state claims. The district court (Román, *J.*) granted the motion to dismiss for lack of subject matter jurisdiction. The court reasoned that ABY failed to sufficiently establish that its civil rights and religious discrimination claims based on the denial of a building permit application were ripe because Clarkstown's Zoning Board of Appeals (the "Zoning Board" or "ZBA") never issued a final decision on the application. Second, the district court held that ABY failed to plead adequately that the Town Defendants' conduct caused ABY's lost-contract injury, as required for Article III standing. Having dismissed on Rule 12(b)(1) grounds, the district court did not reach Appellees' arguments under Rule 12(b)(6).

ABY argues on appeal that its claims were ripe because nothing more than *de facto* finality is required for us to review them, and that

4

such finality attached when the Zoning Board informed ABY that it would not entertain its appeal. ABY also argues that the district court erred in holding that ABY failed to satisfy the traceability requirement of Article III standing as to its tortious interference claim because it adequately pleaded that the Town Defendants' conduct caused its contractual injuries. We agree with ABY and, therefore, we **REVERSE** the judgement of the district court and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND[1]

ABY is a religious educational institution that provides secular and Orthodox Jewish religious instruction to girls in grades pre-K through 12. In October 2018, ABY entered into a contract with Grace Church to purchase the property at issue to open an Orthodox Jewish school. The property included a sanctuary, a nursery, and an

---

[1] Because the Amended Complaint was dismissed at the pleading stage, on this appeal, we accept its factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016).

educational wing of approximately fifty classrooms that had been in use as a school for several decades. App'x at 23. The contract contemplated a purchase price of $4.3 million and a closing date of December 31, 2018 that could be extended by agreement.

After executing the contract, ABY sought the necessary financing. ABY first applied for tax-exempt bonds from the Rockland Economic Assistance Corporation ("REAC"), which is administered by the Rockland County Industrial Development Agency ("IDA"). Since the REAC had previously authorized the issuance of tax-exempt bonds to ABY for construction at a different location, ABY asked the REAC to repurpose its prior approval towards the Grace Church project.

The REAC informally voted to approve the transfer of approval, pending a public hearing scheduled to take place in mid-January 2019. Separately, ABY also sought funding in the private

6

market, and, in December 2018, secured a $5 million loan commitment from Investors Bank.

ABY alleges that its apparently imminent purchase of the property quickly generated opposition from segments of the local community. At a November 27, 2018 Town Board Meeting, according to ABY, Defendant Hoehmann announced that the Town would "strongly enforce" applicable zoning and building-code regulations on the property. App'x at 32. In response to conversations about potential building-code violations, Hoehmann stated that "all of our building codes will be followed. We will issue search warrants if necessary." App'x at 122. At the meeting, ABY further asserts that Hoehmann characterized Rabbi Aaron Fink, founder and Dean of ABY, as having stated that ABY planned "to buy, close, move in and operate" a school at the property. App'x at 285. Hoehmann stated in response that "[t]his will not occur in the Town of Clarkstown without all approvals." *Id.* Hoehmann also told the audience that

"there is definitely an interest in this property for Town usage." *Id.* at 32.

After Rabbi Fink disclosed ABY's REAC funding and shared that there would be an upcoming hearing on the issue, Hoehmann allegedly told the audience to research the IDA to obtain more information and the particulars of the upcoming meeting. Hoehmann allegedly concluded the public portion of the Board Meeting by reminding community members to "reach out to the IDA and the County Legislature." App'x at 123. In late 2018, members of the community formed a local chapter of an organization known as CUPON. CUPON operates in parts of New York and New Jersey and, ABY alleges, is dedicated to opposing the growth of the Hasidic community in those areas. Here, ABY alleges that CUPON's objective was to block the transaction and keep the school out of the community.

On December 18, the IDA canceled the public hearing at which the REAC was scheduled to formally approve the bond funding it had

8

previously approved informally. The IDA's executive director explained that holding a hearing before ABY had received preliminary permits or approvals from the Town would be "putting the cart before the horse." App'x at 33-34. Accordingly, on December 26, ABY submitted a building-permit application to the Town's Building Department to make certain improvements to the property.

Town officials and CUPON leadership came together at another meeting on January 10, 2019. In his remarks at this meeting, Hoehmann allegedly assured the audience that ABY would need a variance to use the property as a school, even though the Building Inspector had yet to rule on its building permit application. The Building Inspector formally denied ABY's permit application the following day. The Inspector's denial letter explained that "the last required NY State Fire Safety inspection for a school of general instruction on this property was conducted on December 11, 1990." App'x at 221. The letter went on to say that because the property did not satisfy local code requirements of a minimum frontage on

adjacent roads, a zoning variance would be required.

In response to the Building Inspector's denial, ABY appealed to the ZBA and argued that the Building Inspector misapplied the relevant zoning laws. On March 19, the Building Inspector informed ABY that the ZBA "requires a survey of the property to be submitted as part of the application before it can be processed" even though, according to ABY, nothing in the Town Code or ZBA rules required such a survey, and the requirement served no practical purpose. App'x at 223. Nevertheless, ABY obliged. Once the survey had been completed, on May 7, ABY requested a hearing date for its appeal to the ZBA. However, the ZBA failed to respond to this request, and the project came to a standstill. Subsequently, Investors Bank revoked its commitment to provide financing.

Under the contract, ABY was obliged to close on the property on May 16, 2019. But by then, ABY had lost its financing and failed to secure the required permits. And the ZBA still had yet to schedule a hearing on ABY's appeal. When ABY failed to close, Grace Church

10

notified ABY that it was terminating the contract to sell the property and "revoking any consent to land use applications relating to the property." App'x at 242. Shortly thereafter, ABY formally objected to Grace Church's cancellation of the contract and urged the ZBA to schedule a hearing on its appeal. On July 9, the Town's counsel wrote to ABY regarding the status of the appeal:

> Please be advised that the Zoning Board of Appeals will not entertain any appeal by Ateres Bais Yaakov Academy of Rockland ("Ateres") with respect to the Grace Baptist Church property located at 20 Demarest Avenue, Nanuet, NY. Grace Baptist Church has specifically advised the Town that the contract for the sale of the property to Ateres has been terminated and Ateres' right to make any application to the Town concerning their property has been revoked.
>
> Under separate cover, the Town will be refunding the fee submitted by Ateres for the appeal.

App'x at 267.

On October 3, the Town announced that it was purchasing the

11

property for itself.[2]

ABY then sued the Town of Clarkstown, Supervisor Hoehmann, and CUPON in district court asserting five claims: (1) a RLUIPA claim against the Town; (2) a claim under 42 U.S.C. § 1983 against the Town Defendants alleging violations of the First and Fourteenth Amendments; (3) a conspiracy claim under 42 U.S.C. § 1985 against all Defendants; (4) a claim under the New York Constitution against the Town Defendants for alleged violations of freedom of worship and assembly; and (5) a claim for tortious

---

[2] In August 2019, ABY filed a state law Article 78 Petition against the Town, the Zoning Board, and the Building Department in the Supreme Court of New York, County of Rockland alleging religious discrimination and violations of the Town's zoning and permitting laws and seeking to compel the ZBA to either hear its appeal or invalidate the Building Department's denial of its permit.

On December 23, the court dismissed the petition for lack of standing. The court reasoned that "although ABY was initially an 'immediate party' to the administrative proceedings [Grace's] revocation of its consent terminated ABY's interest in the Property," and concluded that "the ZBA's subsequent actions did not cause ABY to lose its access to financing the acquisition of the Property." App'x at 336.

12

interference with a contract against all Defendants.

The Defendants moved under Rules 12(b)(1) and 12(b)(6) to dismiss the complaint, and the court granted the motion (without prejudice) on jurisdictional grounds. *See Ateres Bais Yaakov Academy of Rockland v. Town of Clarkstown*, No. 20-cv-1399, 2022 WL 2702447, at *16 (S.D.N.Y. July 12, 2022). First, the court held that ABY's religious discrimination and civil rights claims were not ripe under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), and *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2005), because the Zoning Board of Appeals, the municipal entity responsible for the administration of the zoning laws, never issued a final decision on the merits of ABY's application. The court reasoned that Grace's termination of the contract and revocation of its permission for ABY to pursue land-use applications effectively

13

constituted a "voluntary dismissal" of the variance application. *Ateres*, 2022 WL 2702447, at *15.

Next, the court held that ABY's tortious interference injury was not traceable to the Town Defendants because: (1) ABY could have prevented its injury by simply putting additional contingencies in its contract with Grace Church; (2) the Town could not be blamed for the independent decisions of the Church and potential financiers to discontinue their dealings with ABY; and (3) only CUPON—not the Town Defendants—was to blame for ABY's loss of public bond financing. *Id.* at *18-19. The court granted ABY leave to replead its tortious interference claim against CUPON in state court. This appeal followed. We review a district court's dismissal for lack of subject matter jurisdiction *de novo*. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013).

## DISCUSSION

ABY argues that the district court erred because its religious discrimination and civil rights claims are ripe and because, for Article

14

III standing purposes, the lost-contract injury underpinning its tortious interference claim is traceable to the Town Defendants. We agree.

## I.  Ripeness

Ripeness is basic to Article III justiciability. The doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Our Court has been clear that the "ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002), *abrogated on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).

Generally, suits in the land-use context are not ripe until a landowner receives a final, definitive decision on a land-use application. *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287,

15

290 (2d Cir. 2022); *see Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 121 (2d Cir. 2014). As long as "avenues still remain for the government to clarify or change its decision," it is not final and therefore not ripe for judicial review. *Pakdel v. City & Cnty. of San Francisco, California*, 141 S. Ct. 2226, 2231 (2021). But once the government is committed to a position, the landscape changes. "Potential ambiguities evaporate and the dispute is ripe for judicial resolution." *Id.* at 2230.

In dismissing ABY's religious discrimination and civil rights claims as unripe, the district court concluded that ABY had not suffered an "'actual, concrete injury' because the ZBA never issued a final decision on ABY's appeal and variance application" prior to Grace terminating its contract with ABY. *Ateres*, 2022 WL 2702447, at *14 (quoting *Williamson Cnty.*, 473 U.S. at 193). On this basis, the court concluded that the "ZBA's non-final decision here does not give rise to an injury that is sufficiently concrete and particularized to satisfy Article III" because Grace Church's termination "ceased ABY's

16

contract vendee status, through which ABY was entitled to submit applications for building permits and variances." *Id.* at \*14-15 (quotations omitted).

No one doubts that the power of local governments to zone and control land use is broad and its proper exercise is "an essential aspect of achieving a satisfactory quality of life." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981). In this vein, a number of courts have noted that "despite the temptation it is not the province of a federal court to act as a super-zoning board." *Schenck v. City of Hudson*, 114 F.3d 590, 594 (6th Cir. 1997); *see Burns v. City of Des Peres*, 534 F.2d 103, 108 (8th Cir. 1976); *Steel Hill Dev., Inc. v. Town of Sanbornton*, 469 F.2d 956, 960 (1st Cir. 1972).

At the same time, however, federal courts have an obligation to adjudicate cases that invoke our jurisdiction, and we do not close our doors to litigants properly seeking federal review simply because their grievances touch on local zoning matters.

17

In striking this balance, we consider "whether we would benefit from deferring initial review until the claims we are called on to consider have arisen in a more concrete and final form." *Murphy*, 402 F.3d at 347. So long as a plaintiff has submitted a meaningful application to municipal agencies to address its land-use controversy, and the municipal entity responsible for the relevant zoning laws has had an opportunity to commit to a position "that by all accounts, it intends to be final," the parties' dispute is sufficiently final for ripeness purposes. *Vill. Green at Sayville*, 43 F.4th at 297-98 (quoting *Sunrise Detox*, 769 F.3d at 124); *Williamson Cnty.*, 473 U.S. at 186. It is important to bear in mind that "the finality requirement is relatively modest," and "nothing more than *de facto* finality is necessary." *Pakdel*, 141 S. Ct. at 2230.

Considering these factors, we conclude that, in declining review of ABY's application, the ZBA—representing the Town—reached a decision that was sufficiently final for ripeness purposes.

18

Here, ABY plausibly alleges that it submitted a meaningful application for a variance to the ZBA after its Building Permit Application was denied on January 11, 2019. App'x at 34, 38, 47. ABY also plausibly alleges that the ZBA issued a final decision by choosing not to adjudicate ABY's appeal of this denial. Following that denial, the ZBA declined to respond to at least five letters urging it to schedule a hearing. App'x at 49, 53, 55; *see* Appellees' Br. at 16. Further, ABY formally objected to Grace Church's withdrawal from the sales contract, contending to the ZBA "that the Town's interference was the direct cause of ABY losing its financing resources." App'x at 53. Finally, on July 9, 2019, Town counsel wrote to ABY that the ZBA "will not entertain any appeal by [ABY] with respect to the [property]." *Id.* at 55.

This letter made the ZBA's position pellucid: it had reached a decision to dismiss ABY's appeal without revisiting the Building Inspector's decision, and it intended the decision to be final. At this point, there was nothing more ABY could have done. Once Grace

19

Church terminated the contract and the Town stepped in and purchased the property, ABY had no further avenues of review. At that point, it was no longer possible that its claims could take on "a more concrete and final form." *Murphy*, 402 F.3d at 347. Because these events amount at a minimum to *de facto* finality, which is all that is required, we conclude that the district court improperly dismissed ABY's religious discrimination and civil rights claims.

## II. Lost-Contract Injury Traceability

Next, ABY contends that there is Article III jurisdiction to adjudicate its tortious interference claim against the Town Defendants and CUPON because the Amended Complaint plausibly alleged a causal connection between their conduct and the loss of the Grace Church contract.

The district court disagreed. It concluded that because the loss of the contract was not traceable to the Town Defendants, ABY lacked standing to bring its tortious interference claim against them. But it did grant leave for ABY to replead its tortious interference claim

against CUPON in state court. The court reasoned that under the contract, ABY had agreed to pay Grace Church the full purchase price in a single payment on the closing date, "regardless of whether ABY needed financing to do so, or whether ABY would be unable to operate the property for its intended purpose pending approval by the Town." *Ateres*, 2022 WL 2702447, at *18. Accordingly, the court concluded that ABY's injuries were of its own making and that it failed to allege "how the Town Defendants' conduct had a determinative or coercive effect on these third parties." *Id.* (internal quotation marks omitted). But this reasoning sounds in proximate cause, which is the wrong standard, and, consequently, overstates the showing that is required.

ABY alleges that through their oversight and participation in the zoning process, the Town and Hoehmann worked together with CUPON to prevent ABY from performing under its contract with Grace Church by obstructing ABY's attempts to secure financing, denying its permit application, and refusing to consider its Zoning

21

Board appeal. ABY asserts that the Town Defendants signaled their opposition to its acquisition of the property, encouraged residents to voice their complaints, worked with CUPON to block the purchase, and denied ABY's initial permit application in an attempt to delay it. These steps, ABY alleges, prevented it from fulfilling its contractual obligations with Grace Church, who subsequently terminated the contract. ABY goes on to allege that the tort injuries it suffered— financial and dignitary—are directly traceable to the Town Defendants' conduct.

> To satisfy Article III's standing requirements,
>
> there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). Standing requires more than "mere speculation about the decisions of third parties" and must rely instead "on the predictable effect of Government action on

the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019).

We have been clear that the causal-connection element of Article III standing, which is the requirement that the plaintiff's injury be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court, does not create an onerous standard. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55-56 (2d Cir. 2016) ("A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing."). It requires no more than *de facto* causality, a standard that is, of course, lower than for proximate causation. *Dep't of Com.*, 139 S. Ct. at 2566; *see also Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("[F]or purposes of satisfying Article III's causation requirement, we are concerned with something *less than the concept of proximate cause*." (citation omitted)). ABY passes this test. It plausibly alleges that the Town Defendants took steps to frustrate its planned acquisition of the

Grace Church property—steps that predictably prevented ABY from securing the regulatory approvals necessary to acquire the property, cut off ABY's access to public and private financing, and led to Grace Church's termination of the contract.

We conclude that these contentions plausibly allege that the Town Defendants' actions had a "predictable effect" on the decisions of relevant third parties—namely, Grace Church, the REAC, and the private financier, Investors Bank. *Dep't of Com.*, 139 S. Ct. at 2566. We therefore conclude that the Amended Complaint plausibly alleged a causal connection between the Town Defendants' actions and injuries that resulted from ABY's lost contract. The district court therefore had subject matter jurisdiction to adjudicate ABY's tortious interference claims against all Defendants on the merits.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

24